**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TOLL BROS. INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| v. | : | **CIVIL ACTION** |
| | : | |
| **CENTURY SURETY COMPANY et al,** | : | **NO. 07-1296** |
| | : | |
| **Defendants.** | : | |
| | : | |
| | : | |
| | : | |
| | : | |

**MEMORANDUM OPINION**

**Tucker, J.**                                                                **June ___ , 2013**

Presently before the Court are cross-motions for summary judgment: Plaintiff's Motion

for Partial Summary Judgment (Doc. 61), Defendant Essex Insurance Company's Response in

Opposition thereto (Doc. 65), Defendant Essex Insurance Company's Motion for Summary

Judgment (Doc. 62), and Plaintiff's Response in Opposition thereto (Doc. 66).  Upon

consideration of the parties' motions with briefs and exhibits, and for the reasons set forth below,

Plaintiff's motion will be **granted** and Defendant's motion will be **granted in part and denied**

**in part**.

## I. FACTUAL BACKGROUND

Plaintiff Toll Brothers, Inc. ("Toll") is a luxury homebuilder that builds new home

communities throughout Pennsylvania.  Certain communities in Pennsylvania are governed by

local ordinances requiring the installation of fire suppression systems.  Accordingly, homes in

Toll communities that are subject to these local ordinances contain fire suppression systems,

including sprinklers.

On or about April 22, 1999, Toll hired H.A.S. Protection, Inc. ("H.A.S.") as a subcontractor to provide and install fire suppression systems in a number of residential communities in the greater Philadelphia area ("Construction Agreement"). Article 3 of the Construction Agreement between Toll and H.A.S. required H.A.S. to indemnify and defend Toll for any claim or demand arising out of or relating to H.A.S.'s performance of work under the Construction Agreement. Article 4 of the Construction Agreement required H.A.S. to name Toll as an additional insured under its insurance policy and to procure and maintain for the term of the Construction Agreement general liability insurance of $1,000,000. To comply with Article 4, H.A.S. contracted with Defendant Essex Insurance Company ("Essex") for a commercial general liability policy of insurance. This policy, No. 3CK6280, was effective June 26, 2003 to June 26, 2004. H.A.S. renewed the policy, under No. 3CK6533, for the period of June 26, 2004 to June 26, 2005 (collectively, the "Policies"). The Policies covered property damage. H.A.S. supplied a certificate of insurance to Toll identifying Toll as an additional insured under the original policy, No. 3CK6280. However, Essex denies that Toll was an additional insured under the renewed policy, No. 3CK6533. Toll maintains that it was an additional insured under both Policies.

Shortly after H.A.S. completed the installation of its fire suppression systems, Toll began receiving warranty and reimbursement claims for damage caused by allegedly malfunctioning fire suppression systems. Homeowner claims began in or about June 16, 2003 and continued for years thereafter. These claims included, but were not limited to, claims asserted by homeowners Ron and MaryEllen Ort and homeowner Sridhar Iyer. Toll and its general liability carrier, Liberty Mutual, investigated the Ort claim and determined that the alleged loses resulted from faulty installation of sprinkler protection equipment installed by H.A.S. Accordingly, in June

2005, Toll tendered the claim to Essex for handling, in accordance with Toll's status as an additional insured under the Policies. During this time, Essex was providing H.A.S.'s defense in multiple litigations involving H.A.S's installation of fire suppression systems. Toll was not involved in these other lawsuits. However, despite being advised of the Ort claim, and despite the fact that Essex was already defending H.A.S. in other lawsuits, Essex did not respond to Toll's tender correspondence, did not issue a reservation of rights or coverage determination letter to Toll, and/or did not provide a defense to Toll in relation to the Ort claim.

On July 18, 2005, Ron and MaryEllen Ort and Sridhar Iyer commenced an action pertaining to their respective claims in the Court of Common Pleas of Chester County, Pennsylvania. See Ronald and MaryEllen Ort et al v. Harvel Plastics et al, Chester County C.C.P., No. 05-5604 ("Ort/Iyer lawsuit"). Toll and H.A.S., among other entities, were named as defendants in this suit. In addition to the Ort/Iyer lawsuit, other legal proceedings were also filed against Toll and H.A.S. in the Court of Common Pleas of Chester County.[1] The causes of action asserted against Toll and H.A.S. in the Ort/Iyer lawsuit were identical. Further, the Ort/Iyer lawsuit alleged that Iyer claim occurred on January 11, 2004 and the Ort claim occurred on August 31, 2004.[2]

Essex provided a defense for H.A.S. in relation to the Ort/Iyer lawsuit, but refused to do the same for Toll despite Toll's repeated requests that it do so. As a result, Toll retained, at its own cost, counsel to defend it in the Ort/Iyer lawsuit. It was determined that the cause of the losses in the Ort/Iyer lawsuit was the negligent introduction of contaminants into sprinkler

---

[1] These were: John and Debra Hoffman v. Toll Brothers, Inc. et al, No. 06-5899 ("Hoffman lawsuit") and James C. Schwaninger v. Toll Brothers, Inc. et al, No. 06-5900 ("Schwaninger lawsuit").

[2] Under Essex's theory, which is that Toll was only included as an additional insured on the original policy, then only the January 11, 2004 claim would potentially be covered. Under Toll's theory, which is that it was included as an additional insured under both Policies, then both the January 11, 2004 claim and the August 31, 2004 would potentially be covered.

systems by H.A.S. during the sprinkler system testing process. Ultimately, Toll incurred defense costs of $99,784.53 and also paid settlement amounts.

## II. PROCEDURAL HISTORY

### A. Essex's Declaratory Judgment Action

On November 16, 2006, Essex initiated a declaratory judgment action against H.A.S. in the United States District Court for the Eastern District of Pennsylvania. See Essex Ins. Co. v. H.A.S. Protection, Inc., No. 06-5076 (E.D. Pa. filed Nov. 16, 2006). Essex was seeking, in a part, a declaration from the Court that the insurance policies issued by Essex to H.A.S were rescinded, null and void, and that Essex did not have a duty to defend and indemnify H.A.S. H.A.S. never appeared in Essex Ins. Co. v. H.A.S. Protection, Inc. As a result, Essex requested and received a default against H.A.S. on January 19, 2007. On March 29, 2007, Essex filed a motion for summary judgment seeking a declaration of equitable rescission of the Policies, as well as a declaration that the Policies were null and void. On May 7, 2007, Toll filed a motion to intervene and stay the pending motion for summary judgment filed by Essex. The Court granted Essex's motion for summary judgment as unopposed on May 9, 2007. Toll's motion to intervene was denied as moot on May 11, 2007.

### B. Toll's Breach of Contract Action

Meanwhile, on February 15, 2007, Toll filed the instant suit against Essex in the Court of Common Pleas of Chester County as a result of Essex's failure to defend and indemnify Toll in the Ort/Iyer lawsuit. At that time, Toll was apparently unaware of the pendency of the Essex Ins. Co. v. H.A.S. Protection, Inc. matter in the Eastern District of Pennsylvania. On March 30, 2007, the suit was removed to this Court based on diversity of citizenship. Toll has asserted claims for the following against Essex: (1) breach of contract (Count VI); (2) defense and

indemnification (Count VII); (3) declaratory judgment (Count VIII); (4) breach of good faith and fair dealing (Count IX); (5) third party beneficiary (Count X).[3]

On November 8, 2007, Essex moved for summary judgment on several grounds. Essex argued, inter alia, that although Toll was provided with an Additional Insured Endorsement for the period of October 30, 2003 to June 26, 2004, that Endorsement only provided the potential additional insured with coverage to the extent provided to the named insured. However, because the Policies had been rescinded and declared null and void in Essex Ins. Co. v. H.A.S. Protection, Inc., Essex asserted that Toll was not entitled to any coverage because the Policies no longer exist. Additionally, Essex argued that Toll allowed the Court's May 7, 2007 Order (granting rescission and declaring the Policies at issue null and void) and the May 11, 2007 Order (denying Toll's motion to intervene in the declaratory matter) to become final. Essex further argued the motion to intervene had been untimely. Therefore, Essex asserted, re-litigation of the issues regarding the rescission of the Policies was precluded pursuant to the doctrines of res judicata and collateral estoppel.

Toll opposed the motion for summary judgment. Following oral arguments, on March 7, 2008, this Court granted Essex's motion for summary judgment. Toll Bros. Inc. v. Century Sur. Co., CIV.A. 07-1296, 2008 WL 638232 (E.D. Pa. Mar. 6, 2008) rev'd, 318 F. App'x 107 (3d Cir. 2009). The Court granted summary judgment on two grounds. First, because Essex Ins. Co. v. H.A.S. Protection, Inc. and this lawsuit involved the same cause of action, and a final judgment on the merits was issued in Essex Ins. Co. v. H.A.S. Protection, Inc., an action which involved H.A.S. (Toll's privy), res judicata barred Toll's claims in this litigation. Second, the Court found that no coverage existed for Toll under the Policies pursuant to the terms of the Additional

---

[3] Toll Bros. originally filed suit against four defendants: Essex, Century Surety Insurance Company, Transportation Insurance Company, and ABC Corps. 1-100. Toll Bros. voluntarily dismissed its claims against Transportation and Century Surety on June 13, 2007 and August 21, 2007, respectively.

Insured Endorsement, which states that an additional insured was entitled to no greater coverage than the primary insured, because the insurance policy between Essex and H.A.S. was rescinded.

Thereafter, on April 1, 2008, Toll filed a timely notice of appeal.

**C. Third Circuit Reversal**

On March 24, 2009, the United States Court of Appeals for the Third Circuit issued an Opinion reversing and remanding this Court's grant of summary judgment in favor of Essex. Toll Bros., Inc. v. Century Sur. Co., 318 F. App'x 107 (3d Cir. 2009). The Third Circuit held that there was no privity between Toll and H.A.S. because their interests in Essex Ins. Co. v. H.A.S. Protection, Inc. conflicted. Specifically, the Third Circuit reasoned that "[b]y its default in Essex v. H.A.S. Protection[,] H.A.S. was clearly indifferent to a decision rescinding its Essex insurance policy. Toll, however, had a strong interest in opposing the rescission of the Essex insurance policy." Id. at 112. Accordingly, in the absence of such privity, Essex could not argue that res judicata applied.

Further, the Third Circuit specifically noted that its decision permits Toll to contest whether H.A.S. in fact perpetrated a fraud entitling Essex to void its H.A.S. policy. Id. at 113. Additionally, the Third Circuit also reversed the grant of summary judgment on the issue of whether "the policy might permit coverage for an additional insured notwithstanding a rescission of H.A.S.'s coverage." Id. Subsequently, as a result of the Third Circuit's decision, this matter was relisted on the district court's docket on November 17, 2009.

**D. Remand**

Once relisted, the parties conducted discovery and participated in various settlement conferences. On January 31, 2011, the parties filed cross-motions for summary judgment. On June 24, 2011, the Court denied both motions for summary judgment on the grounds that (1) discovery had not concluded, and (2) a question remained as to whether or not H.A.S.

misrepresented material facts during the insurance application and/or renewal process, thereby perpetuating a fraud. Since the Court's denial of the motions, additional discovery has been conducted. The parties have now, once again, file cross-motions for summary judgment.

## I.STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed R. Civ P. 56(a); see also Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248; Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 327 (1986). Once the moving party has carried its burden under Rule 56, "its' opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007). Under Fed. R. Civ. P. 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for

trial. See Anderson, 477 U.S. at 249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. See Horsehead Indus., Inc. v. Paramount Communications, Inc., 258 F.3d 132 (3d Cir. 2001). The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains. See, e.g., Love v. Rancocas Hosp., 270 F.Supp.2d 576, 579 (D.N.J. 2003); Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F.Supp.2d 324, 330 (D.N.J. 2002).

## II. DISCUSSION

Under Pennsylvania law, interpretation of an insurance contract, including analysis of coverage, is a question of law determined by the court. Hamilton Bank v. Ins. Co. of N. Am., 384 Pa. Super. 11, 15, 557 A.2d 747, 750 (1989); see also Alea London Ltd. v. Woodlake Mgmt., 594 F. Supp. 2d 547, 550-51 (E.D. Pa. 2009) aff'd, 365 F. App'x 427 (3d Cir. 2010) (citing Donegal Mutual Ins. Co. v. Baumhammers, 595 Pa. 147, 938 A.2d 286, 291 (2007)). In construing an insurance policy, unambiguous terms are given their "plain and ordinary meaning." St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 (3d Cir. 1991) (quoting Pennsylvania Mfrs. Ass'n Ins. Co. v. Aetna Casualty & Sur. Ins. Co., 426 Pa. 453, 457, 233 A.2d 548, 551 (1967)). Ambiguous terms, however, are to be construed strictly against the insurer and in favor of the insured. Id. (citing Mohn v. American Casualty Co of Reading, 458 Pa. 576, 586, 326 A.2d 346, 351 (1974)). The determination of whether contract language is ambiguous is a question of law. Id. Under Pennsylvania law, a provision of a policy is ambiguous if there is "intellectual uncertainty," meaning that reasonable people could disagree as to the meaning or the contract language could be understood in more than one way. Id. (citing

Mellon Bank N.A. v. Aetna Business Credit, 619 F.2d 1001, 1011 (3d Cir.1980)).  In making this determination, the court is to consider "the actual words of the agreement themselves, as well as any alternative meanings offered by counsel, and extrinsic evidence offered in support of those alternative meanings.")  Id.  However, it must be remembered that "[t]he language of the policy may not be tortured ... to create ambiguities where none exist." Id. (quoting Pacific Indem. Co. v. Linn, 766 F.2d 754, 761 (3d Cir.1985)).

In the instant matter, Essex has moved for summary judgment on all of Toll's claims on the grounds that Essex was not required to provide a defense to or indemnify Toll.  In so arguing, Essex advances a number of theories as to why Toll allegedly was not covered by the Policies.  Conversely, Toll has moved for partial summary judgment on the discreet issue of whether Essex had a duty to provide a defense to Toll in the Ort/Iyer lawsuit.

**A.  Essex's Motion for Summary Judgment**

1.  The Essex Policies Issued to H.A.S. Protection Were Properly Rescinded and Declared Null and Void

Essex first argues that the insurance policies issued to H.A.S. were properly rescinded and declared null and void because H.A.S. made material misrepresentations to Essex during its insurance application process.  Specifically, Essex argues that H.A.S.'s insurance application, which was submitted to Essex on or about May 20, 2003, required that H.A.S. disclose any existing claims, losses, or occurrences in the prior five years that could give rise to claims for defective sprinkler systems.  Essex avers that at the time the application was submitted, H.A.S. was aware of potential claims arising for its purchase and installation of over 40,000 allegedly defective sprinkler heads manufactured by Senju Metal Industry Company, Ltd. ("Senju").  Indeed, on February 27, 2003, H.A.S. filed a civil action complaint against Senju in the United States District Court for the Eastern District of Pennsylvania, seeking compensation for

monetary damages H.A.S. allegedly sustained as a result of Senju's faulty sprinkler heads that H.A.S. had purchased and installed. See H.A.S. Protection, Inc. v. Senju Metal Industry Co., Ltd. et al, No. 03-1215 (E.D. Pa. filed Feb. 27, 2003). Despite this, H.A.S. failed to disclose the existence of claims (and future potential claims) arising from the defective design and/or installation of sprinkler heads such as the Senju sprinkler systems, or the existence of the Senju lawsuit, on its insurance application. Interestingly, however, H.A.S. *did* provide information about other potential claims arising from its use and installation of three other brands of sprinklers. Potential claims related to these three other brands of sprinkler heads were specifically excluded from coverage by an endorsement in the Policies. Essex avers that had it known of the risks associated with the Senju sprinkler heads, it would have refused to provide insurance to H.A.S. or increased H.A.S.'s premium.

Toll counters that Essex has failed to provide sufficient evidentiary support for its allegation that H.A.S. made misrepresentations during the insurance application process. Toll argues that Essex has provided no information regarding how Essex would have acted if it had knowledge of the Senju lawsuit. Specifically, Toll claims that Essex fails to advise the Court exactly where on the application for insurance a request for the allegedly relevant information is made and, in the event such a request exists, how the information provided was incomplete, misrepresented, or false.

In Pennsylvania, an insurance company may rescind a policy if (1) the insured made a false representation; (2) the insured knew the representation was false when it was made or the insured made the representation in bad faith; and (3) the representation was material to the risk being insured. Justofin v. Metro. Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004) (citing Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co., 10 F.3d 144, 148 (3d Cir.1993)).

The insurer has the burden to prove all three elements by clear and convincing evidence. Further, in order for the court to grant summary judgment for the insurer, the insurer must show that reasonable minds could not differ on the question of the reasonableness of the insurer's belief that rescission was appropriate. Jung v. Nationwide Mut. Fire Ins. Co., 949 F. Supp. 353, 356 (E.D. Pa. 1997). Thus, if a jury could find by clear and convincing evidence that the insurer's belief that it could rescind the policy was unreasonable, summary judgment is not appropriate. Id.

The Court finds that Essex has met its burden of proving that H.A.S. made misrepresentations to Essex during the insurance application process, and that these misrepresentations justify rescinding and declaring null and void the Policies. The insurance application includes a document entitled "Fire Sprinkler Contractors Supplemental Application," which asks certain questions specific to fire sprinkler contractors like H.A.S. (Def.'s Ex. C to Ex. A.) [hereinafter "Supplemental Application"]. Question 12(c) of the Supplemental Application specifically asks the applicant "[h]ave there been any professional liability claims within the last 5 years," to which H.A.S. marked "no." This answer was clearly false, because H.A.S. indicated, inter alia, in its complaint in the Senju lawsuit that "H.A.S. has been named as a Defendant in at least three lawsuits as a consequence of leakage of the defective Senju sprinkler heads which were unknowingly installed by H.A.S...." (Complaint at ¶ 13, H.A.S. Protection, Inc. v. Senju Metal Industry Co., Ltd. et al, No. 03-1215 (E.D. Pa. Feb. 27, 2003)). The first prong of the test is therefore satisfied because H.A.S. made the false representation to Essex that it had no potential liability within the previous five years when it quite clearly did.

In addition, the second prong is also met because H.A.S. clearly had knowledge that the representations on its application were false. At the time the application was submitted, H.A.S.

was aware of potential claims arising from its purchase and installation of over 40,000 allegedly defective Senju sprinkler heads. (Id. at ¶ 7.) Further, H.A.S. not only possessed this knowledge, but it affirmatively acted on this knowledge by filing a civil action against Senju in this court nearly three months prior to submitting its insurance application to Essex.

The final prong of the rescission test requires that the representation be material to the risk being insured. "A misrepresented fact is material if being disclosed to the insurer it would have caused it to refuse the risk altogether or to demand a higher premium." New York Life Ins. Co. v. Johnson, 923 F.2d 279, 281 (3d Cir. 1991) (citing McCaffrey v. Knights & Ladies of Columbia, 213 Pa. 609, 63 A. 189 (1906)); see also American Franklin Life Ins. Co. v. Galati, 776 F.Supp. 1054, 1060 (E.D.Pa.1991) (also citing New York Life Ins. Co. 923 F.2d at 281) ("Information on an application is material 'if knowledge or ignorance of it would influence the decision of the issuing insurer to issue the policy, or the ability of the insurer to evaluate the degree and character of risk, or the determination of the appropriate premium rate.'") Materiality is generally considered a mixed question of fact and law for the jury, but if "reasonable minds cannot differ on the question of materiality," the court may resolve the issue at the summary judgment stage. Parasco v. Pacific Indemnity Co., 920 F.Supp. 647, 654 (E.D.Pa.1996) (citing Gould v. American–Hawaiian S.S. Co., 535 F.2d 761, 771 (3d Cir.1976)).

Here, Toll argues that that Essex cannot prove how it would have acted if it had known of the risks associated with the Senju sprinkler heads. Toll claims that nothing in the record supports Essex's contention that it would have refused to provide insurance to H.A.S. or increased H.A.S.'s premium for said insurance. The Court disagrees. By H.A.S.'s own estimation, at the time its complaint in the Senju lawsuit was filed, three lawsuits had been filed against it with respect to the Senju sprinklers. By Essex's estimation, there have now been at

least thirteen lawsuits filed against H.A.S. with respect to the Senju sprinklers. This sheer number of lawsuits proves that H.A.S.'s misrepresentations were material. The Court has every reason to believe that, had Essex known of the potential existence of thousands of claims arising out of H.A.S.'s installation of the Senju sprinklers, its determination of whether to grant insurance to H.A.S. would have been affected. At minimum, had the Senju risk been disclosed, Essex likely would have excluded the Senju sprinkler heads from coverage by an endorsement, just as it did with three other brands of sprinkler heads used by H.A.S. Alternatively, disclosure would have resulted in H.A.S. being charged a higher premium. At most, disclosure would have led to H.A.S. being denied coverage by Essex altogether. This much is not only obvious, it is common sense.

Based on the foregoing, the Court finds that no reasonable jury could find that Essex unreasonably sought the rescission of the Policies.

2. Toll Brothers, as the Additional Insured, is Not Entitled to More Coverage than that Afforded to the Named Insured, H.A.S. Protection

As previously discussed, the Third Circuit reversed the grant of summary judgment in two respects. First, in overturning this Court's finding that there was privity between Toll and H.A.S., the Third Circuit expressly permitted Toll to contest whether H.A.S. in fact perpetrated a fraud that entitled Essex to void its H.A.S. policy. Second, the Third Circuit permitted Toll to contest the issue of whether the policy permits coverage for an additional insured notwithstanding a rescission of H.A.S.'s coverage. The Court has now made a determination that the Policies were properly rescinded. The next question now before the Court is whether, in spite of the rescission of the Policies, Toll still has coverage.

Essex argues the answer is no. Essex asserts that Toll, as the additional insured, is not entitled to more coverage than that afforded to the named insured, H.A.S. Essex points to a form

13

in the original policy called the "Additional Insured Endorsement," which states the following:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

SECTION II – WHO IS AN INSURED of the Commercial General Liability Form is amended to include:

Person or Entity:

TOLL BROTHERS, INC. AND IT'S [sic] SUBSIDIAIRIES AND AFFILIATES
3101 PHILMONT AVENUE
HUNTINGDON VALLEY, PA 19006

Interest of the Above:
FIRE SUPPRESSION INSTALLATION

as an additional insured under this policy, but only as respects negligent acts or omissions of the Named Insured and only for occurrences, claims or coverage not otherwise excluded in the policy.

**It is further agreed that where no coverage shall apply herein for the Named Insured, no coverage nor defense shall be afforded to the above-identified additional insured.**

Moreover, it is agreed that no coverage shall be afforded to the above-identified additional insured for any "bodily injury," "personal injury," or "property damage" to any employee of the Named Insured or to any obligation of the additional insured to indemnify another because of damages arising out of such injury.

(Def.'s Ex. A, "Additional Insured Endorsement.") (emphasis added).  Essex argues that this form clearly and unambiguously provides that where there is no coverage for the named insured there can be no coverage for the additional insured.  Thus, Essex argues, H.A.S. has no coverage because the Polices were rescinded and declared null and void; accordingly, it is Essex's position that Toll also has no coverage. Essex concludes that if the Court were to decide in Toll's favor, the Court would be affording more coverage to the additional insured than that available to the named insured, a result which is disfavored by Pennsylvania courts. (Def.'s Br. Supp. Mot. Summ. J. 20.) (citing <u>Esmond v. Liscio</u>, 209 Pa. Super. 200, 211, 224 A.2d 793, 798 (1966)).

In response, Toll raises three theories in support of its contention that the Additional Insured Endorsement does not preclude coverage for Toll. First, Toll argues that the Additional Insured Endorsement was not intended to be interpreted in the way Essex asserts it should be interpreted. Toll claims the provision was designed to ensure that the scope of coverage on a per-claim basis was the same for both the primary insured and the additional insured. Toll avers its interpretation is supported by the fact that Essex was aware of the purpose and context in which H.A.S. obtained the policies — i.e., to support H.A.S.'s defense and indemnity obligations to Toll.

Relatedly, Toll argues that the Additional Insured Endorsement is ambiguous because "coverage," a critical term in the provision, is not defined anywhere in the Policies. Toll asserts that Essex reads the term "coverage" to mean that if the policy of insurance for the named insured is found to be null and void, then the policy of insurance is null and void as to all insureds, including additional insureds. Toll asserts that if Essex intended that result, it should have written the policy to definitively state as much. Thus, Toll advocates a reading of the provision as signifying the applicability of specific types of claims that are covered under the policy (such as personal injury, property damage, and automobile liability), not that the policy as a whole would be null and void.

Second, Toll argues that in addition to being ambiguous, the Additional Insured Endorsement conflicts with a severability clause contained in the Policies. That provision provides:

> SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS
>
> […]
>
> 7. Separation Of [sic] Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in the Coverage Part to the first Named Insured, this insurance applies:

    a.   As if each Named Insured were the only Named Insured; and

    **b.   Separately to each insured against whom claim is made or "suit" is brought.**

(Def.'s Ex. A, "Insurance Policy" at 10.) (emphasis added). Toll contends that the language of this clause affirms that Toll has separate and distinct rights as an additional insured, despite any actions of the named insured.

Finally, Toll claims that despite Essex's contentions, Pennsylvania law does not preclude recovery by an innocent additional insured as a matter of law. (Pl.'s Resp. Opp'n 20.) (citing Spezialetti v. Pac. Employers Ins. Co., 759 F.2d 1139 (3d Cir. 1985); Ferrino v. Pac. Indem. Co., CIV. A. 95-102, 1996 WL 32146 (E.D. Pa. Jan. 24, 1996); Atl. Mut. Ins. Co. v. Ctr. Capital Corp., CIV. A. 91-4636, 1992 WL 97823 (E.D. Pa. May 5, 1992) aff'd, 983 F.2d 1049 (3d Cir. 1992)). Toll concludes that "*[i]f* the parties to a policy have separate interests in the policy, then the acts of one insured will not preclude recovery by another insured." Id. at 21 (emphasis added).

The Court finds Toll's arguments to be unpersuasive. With respect to the first argument, the Court previously acknowledged that ambiguous terms are to be strictly construed against the insurer and in favor of the insured. St. Paul Fire & Marine Ins., 935 F.2d at 1431. However, the Court does not find the policy's use of the word "coverage" to be ambiguous. The plain and ordinary meaning of "coverage" is the "inclusion of a risk under an insurance policy" or "the risks within the scope of an insurance policy." BLACK'S LAW DICTIONARY 422 (9th ed. 2009); see St. Paul Fire & Marine Ins. Co., 935 F.2d at 1431 ("[U]nambiguous terms are given their plain and ordinary meaning.") "The language of the policy may not be tortured ... to create ambiguities where none exist." Id. Regardless of whether "coverage" is viewed as broadly as

Essex contends or as narrowly as Toll contends the basic question is the same: what protection, if any, remains for Toll now that the Policies have been rescinded due to misrepresentations made by H.A.S.?

The answer is none. All of Toll's assertions that it is still covered despite the rescission of the Policies hinge on Toll's contention that its coverage is separate and distinct from H.A.S.'s. Thus, in its second argument, Toll attempts to locate its allegedly "separate and distinct" rights in the severability clause that Toll claims conflicts with the Additional Insured Endorsement. But Toll's insistence that the severability clause grants it separate and distinct rights ignores the fact that the Additional Insured Endorsement explicitly announces: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." The Additional Insured Endorsement then goes on to state that "where no coverage shall apply herein for the Named Insured, no coverage nor defense shall be afforded to the above-identified additional insured." (Def.'s Ex. A, "Additional Insured Endorsement.") The purpose of an endorsement such as this is to extend the liability protection of the policy to other persons or entities beyond the named insured. But, as in this case, the coverage afforded to the additional insured is limited to the coverage specified in the endorsement — i.e., coverage that is no greater than the coverage available to H.A.S. On account of its fraudulent omissions, H.A.S. has no coverage. Accordingly, the language of the Additional Insured Endorsement prevents Toll from having any coverage. See also 1 Insurance Claims and Disputes § 2:26 (6th ed.) ("In general, if an insurer has a right to rescind, the rescission is effective against innocent insureds.") Toll's second argument therefore fails.

Likewise, the Court also finds Toll's third argument to be unconvincing. Toll is correct that Pennsylvania law does not, as a matter of law, automatically preclude recovery by an

innocent additional insured on account of the fraudulent actions of the primary insured. However the cases cited by Toll— Spezialletti, Ferrino, and Atl. Mut. Ins. Co. — do not stand for the proposition that an innocent additional insured, by sheer virtue of their innocence, is necessarily covered. Rather, these cases stand for the proposition that a court must conduct the necessary analysis to determine whether the additional insured *could* be covered. See Spezialetti, 759 F.2d at 1140-41 (finding that the applicable case law "demonstrate[s] that an innocent co-insured is no longer automatically precluded from recovery as a matter of law…. Pennsylvania now requires that the intent and relationship of the parties be established. The facts in *some* cases establish that the underlying reason for denying coverage does not exist and in those circumstances it would be inequitable to apply an absolute bar.") (emphasis added); Ferrino v. Pac. Indem. Co., 1996 WL 32146 at *2 ("[W]hether an innocent co-insured can recover after another co-insured commits fraud depends on whether the interests are joint or severable."); Atl. Mut. Ins. Co., 1992 WL 97823 at *4 ("The court [in Spezialetti] noted that Pennsylvania law does not automatically preclude recovery by an innocent co-insured….The intent of the parties must be established in determining if recovery is to be permitted, [and] this intent can be determined from the language of the policy.") Thus, Toll accurately framed the issue when it stated that "*[i]f* the parties to a policy have separate interests in the policy, then the acts of one insured will not preclude recovery by another insured." But, as the Court has found, the language of the Additional Insured Endorsement does not support the conclusion that H.A.S. and Toll have separate interests.[4]

---

[4] Toll also avers that the Third Circuit "confirmed on appeal in this case that H.A.S. and Toll had separate interests under the Essex Policies of Insurance." (Pl.'s Resp. Opp'n 21.) In addition, Toll argues that the Third Circuit "has also clearly enunciated that the rescission upon which Essex relies does not apply to Toll, giving Toll the explicit right to challenge the basis for the rescission and thereby the order of rescission….Therefore, Essex's unsupported allegation that the rights of Toll as an additional insured under the Essex Policies of Insurance were voided in May 2007, along with H.A.S.'s right, is unsupported based upon case law, the specific language of the Essex Policies of Insurance, and the ruling of the United

Based on the forgoing, the Court grants summary judgment in favor of Essex on all of Toll's claims except Toll's claim for defense (Count VII). The Court need not reach the additional arguments raised by the parties.[5]

A. Toll's Motion for Partial Summary Judgment

In both its motion for partial summary judgment and its brief in opposition to Essex's motion for summary judgment, Toll argues that even if the Court holds that Toll could not have coverage broader than that available to H.A.S., Essex owed Toll, at minimum, the same amount of coverage that Essex afforded H.A.S. Accordingly, Toll contends that Essex, as a result of providing a defense to H.A.S. in the Ort/Iyer lawsuit and based on Toll's status as an additional insured, also had a duty to defend Toll in the Ort/Iyer lawsuit.

In response, Essex asserts that an additional insured has no automatic right to a defense based solely on the fact that the named insured received one. Essex argues that it provided H.A.S a defense under a reservation of rights, which included the right to seek a determination of whether coverage was afforded under the Policies. Essex further states that it later proceeded to seek a determination of coverage by filing the declaratory judgment action, and should not now

States Court of Appeals for the Third Circuit." (Id.)

The Court disagrees with Toll's reading of the Third Circuit's opinion. The Third Circuit found H.A.S. and Toll had separate interests "for purposes of determining the preclusive effect vis a vis Toll of Essex's default summary judgment against H.A.S." Toll Bros., Inc. v. Century Sur. Co., 318 F. App'x at 112. The Third Circuit did not find that H.A.S. and Toll had separate interests under the Policies, and in fact remanded to this Court for a determination of this question. Likewise, the Third Circuit did not "clearly enunciate" that the rescission did not apply to Toll. Rather, the Third Circuit held that, because there was no privity between H.A.S. and Toll, the Policies could not be rescinded with respect to Toll without Toll first being permitted to "contest whether H.A.S. in fact perpetrated a fraud entitling Essex to void its H.A.S. policy." Id. at 113. Toll has now had its opportunity to contest.

[5] In addition to the above stated arguments, Essex also argued that, even assuming the Policies were not declared null and void with respect to Toll, Toll would still not be entitled to coverage because: (1) The underlying lawsuits filed by the plaintiff-homeowners did not allege an "occurrence" within the meaning of the Policies; (2) The property damage alleged in the underlying lawsuits did not take place during the effective Essex policy periods; and (3) Other provisions of the Policies exclude coverage of Toll's claims. Toll refuted all of these arguments.

be "punished" for providing a defense to H.A.S. under a reservation of rights.[6]

The Court agrees with Toll that Essex had a duty to defend Toll in the Ort/Iyer lawsuit. It is important to be mindful that the duty to defend under an insurance policy is broader than the duty to indemnify. Alea London Ltd., 594 F. Supp. 2d at 550 (citing Lucker Mfg., Inc. v. Home Ins. Co., 23 F.3d 808, 813 (3d Cir.1994); see also Britamco Underwriters, Inc. v. C.J.H., Inc., 845 F. Supp. 1090, 1094 (E.D. Pa. 1994) aff'd, 37 F.3d 1485 (3d Cir. 1994) ("Although similar, the duty of an insurer to indemnify is somewhat more limited than its duty to defend. While the insurer *must* defend its insured if the complaint alleges conduct that potentially falls within the scope of the policy, it must indemnify its insured only if liability is found for conduct that actually falls within the scope of the policy.") (emphasis added).

"Under Pennsylvania law, an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may *potentially* come within the policy's coverage." Pac. Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985) (emphasis in original); see also American Contract Bridge League v. Nationwide Mut. Fire Ins. Co., 752 F.2d 71, 75 (3d Cir. 1985); C.H. Heist Caribe Corp. v. American Home Assurance Co., 640 F.2d 479, 483 (3d Cir.1981); Gedeon v. State Farm Mutual Automobile Insurance Co., 410 Pa. 55, 58, 188 A.2d 320, 321–22 (1963); Cadwallader v. New Amsterdam Casualty Co., 396 Pa. 582, 152 A.2d 484 (1959); Wilson v. Maryland Casualty Co., 377 Pa. 588, 105 A.2d 304 (1954). The obligation to defend is determined solely by the allegations of the complaint in the underlying lawsuit. Wilson, 377 Pa. at 594, 105 A.2d at 307; see also C.H. Heist Caribe Corp., 640 F.2d at 483 ("the factual allegations of [the] complaint against [the insured] are controlling.") But before considering whether a complaint is potentially covered by an insurance policy, it is necessary to

---

[6] In opposition, Toll also raises the three arguments previously mentioned in footnote 4, *supra*. For the reasons already stated, the Court will not reach these arguments.

determine the coverage of the policy in the first instance.  Lucker Mfg., 23 F.3d at 813.  In Pennsylvania, as in the majority of jurisdictions, "the inquiry into coverage is independent of, and antecedent to, the question of duty to defend." Id. at 813-14 (citing Erie Ins. Exch. v. Transamerica Ins. Co., 516 Pa. 574, 533 A.2d 1363, 1368 (1987)).  Traditional principles of insurance policy interpretation control the inquiry into coverage.

In addition, the duty to defend remains with the insurer until the insurer can confine the claim to a recovery that is not within the scope of the policy.  If any count in a complaint is covered, the insurer must defend the entire action until such time as the possibility of recovery is confined to claims outside the coverage of the policy.  Cadwallader, 396 Pa. 582, 152 A.2d 484; see also Lucker Mfg. 23 F.3d at 813 ("[I]f indemnification depends upon the existence or nonexistence of disputed facts, the insurer has a duty to defend until the claim is narrowed to one patently outside the policy coverage.") (internal citation omitted); Imperial Cas. & Indem. Co. v. High Concrete Structures, Inc., 858 F.2d 128, 131-32 (3d Cir. 1988) (internal citations omitted); Brittamco Underwriters, Inc., 845 F. Supp. at 1093-94 (internal citations omitted).

Here, the Court is faced with a situation in which Essex made a decision to provide a defense to H.A.S., the named insured, but not to Toll, the additional insured.  Essex made this decision despite the fact that the causes of action asserted against Toll in the Ort/Iyer lawsuit were identical to the claims asserted against H.A.S.  Essex, in providing a defense to H.A.S., clearly recognized that the claims asserted against H.A.S. potentially fell within the scope of the Policies.  By analogy — because the language of the Additional Insured Endorsement implicitly makes the rights of Toll coextensive with the rights of H.A.S. — this means that the claims asserted against Toll also potentially fell within the scope of the Policies.[7]  Having made the

---

[7] Contrary to Essex's assertions, the Court does not believe Toll is asserting that an additional insured is "automatically" entitled to a defense simply because the named insured received a defense. This mischaracterizes Toll's argument.  Rather, the Court understands Toll's argument to be that the fact

determination that the Ort/Iyer claims were potentially covered, Essex was obligated to provide

Toll a defense. <u>Pac. Indem. Co. v. Linn</u>, 766 F.2d at 760.

The fact that Essex provided H.A.S. with a defense under a reservation of rights does not

change the analysis. The Third Circuit in <u>Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.</u> explained the

utility of reservation of rights letters as follows:

> Faced with uncertainty as to its duty to indemnify, an insurer offers a defense under
> reservation of rights to avoid the risks that an inept or lackadaisical defense of the
> underlying action may expose it to if it turns out there is a duty to indemnify. At the
> same time, the insurer wishes to preserve its right to contest the duty to indemnify if the
> defense is unsuccessful. Thus, such an offer [to defend subject to a reservation of rights]
> is made at least as much for the insurer's own benefit as for the insured's.

887 F.2d 1213, 1219-20 (3d Cir. 1989). As suggested by <u>Terra Nova</u>, the purpose of a

reservation of rights is to make the insured aware of the insurer's intention to provide a defense

while also retaining the right to press all causes of action that could lead to a finding of non-

coverage. Thus, a reservation of rights serves two functions: (1) it permits the insurer to provide

a defense to its insured while also preserving its right to deny coverage at a later date, and (2)

puts the insured on notice that the insurer could later argue that the claim in question is not

actually covered. A reservation of rights letter does not, as Essex argues, somehow defeat a duty

to defend that has already been properly triggered. Essex has cited no legal authority in support

of this proposition, and the Court has been unable to locate any.

Accordingly, the Court grants Toll's motion for summary judgment on its duty to defend

claim.

### I.CONCLUSION

For the reasons set forth above, Toll's Motion for Partial Summary Judgment is granted.

In addition, Essex's Motion for Summary Judgment is denied with respect to Toll's defense

---

H.A.S. was provided a defense is evidence of the fact that the Ort/Iyer claims were potentially covered by
the Policies.

claim (contained in Count VII) and granted with respect to Toll's remaining claims.

An appropriate order follows.