**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TOLL BROS., INC.,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| **v.** | : | |
| **ESSEX INSURANCE CO., ET AL.,** | : | **NO. 07-01296** |
| **Defendants.** | : | |

**MEMORANDUM OPINION**

**Tucker, C.J.** **April 29, 2015**

Before the Court is Plaintiff Toll Brothers, Inc.'s Affidavit of Fees and Costs (Doc. 88), Defendant Essex Insurance Company's Response in Opposition thereto (Doc. 89), and Plaintiff's Reply Brief in Further Support of Plaintiff's Affidavit of Fees and Costs (Doc. 90). Also before the Court are the parties' memoranda concerning the issues of Defendant's duty to defend and rescission (Docs. 93, 94). For the reasons set forth herein, the Court will deny Plaintiff's request for fees and costs. This Court also vacates its June 17, 2013 order to the extent that it granted Plaintiff's Motion for Partial Summary Judgment on the duty to defend claim, and enters summary judgment in favor of Defendant on that claim.

## I. Factual Background

Plaintiff Toll Brothers, Inc. ("Toll") is a luxury homebuilder that builds new home communities throughout Pennsylvania. On or about April 22, 1999, Toll hired H.A.S. Protection, Inc. ("H.A.S.") as a subcontractor to provide and install fire suppression systems in a number of residential communities in the greater Philadelphia area. The agreement between Toll and H.A.S. required H.A.S. to indemnify and defend Toll for any claim or demand arising out of or relating to H.A.S.'s provision and installation of the fire suppression systems. Their agreement also

required H.A.S. to name Toll as an additional insured under its insurance policy and to procure and maintain general liability insurance of $1,000,000 for the term of their agreement. Pursuant to H.A.S.'s agreement with Toll, H.A.S. contracted with Defendant Essex Insurance Company ("Essex") for commercial general liability policies of insurance ("Policies"). Toll was named as an additional insured on the Policies.

On July 18, 2005, Ron and MaryEllen Ort and Sridhar Iyer commenced an action in state court against Toll, H.A.S., and other entities. *See Ronald and MaryEllen Ort et al v. Harvel Plastics et al.*, No. 05–5604 (Chester Cty Ct. of Common Pleas) ("Ort/Iyer lawsuit"). The plaintiffs' complaint concerned H.A.S.'s provision and installation of the fire suppression systems. The causes of action asserted against Toll and H.A.S. in the Ort/Iyer lawsuit were identical. Essex provided a defense for H.A.S. in relation to the Ort/Iyer lawsuit, but refused to defend Toll despite Toll's repeated requests that it do so. As a result, Toll retained, at its own cost, counsel to defend it in the Ort/Iyer lawsuit.

**A. Essex Institutes a Declaratory Judgment Action Against H.A.S. for Rescission**

On November 16, 2006, Essex initiated a declaratory judgment action against H.A.S. in this Court. *See Essex Ins. Co. v. H.A.S. Protection, Inc.*, No. 06–5076 (E.D. Pa. filed Nov. 16, 2006) ("Essex/H.A.S. action"). Essex sought, in part, a declaration from the Court that the Policies issued by Essex to H.A.S were rescinded, null, and void, and that Essex did not have a duty to defend and indemnify H.A.S.

H.A.S. never appeared in the Essex/H.A.S. action. As a result, Essex requested and received a default against H.A.S. On March 29, 2007, Essex filed a motion for summary judgment seeking a declaration of equitable rescission of the Policies, as well as a declaration

that the Policies were null and void. The Court granted Essex's motion for summary judgment as unopposed on May 9, 2007.

**B. Toll's Breach of Contract Action**

Meanwhile, on February 15, 2007, Toll filed the instant suit against Essex in the Court of Common Pleas of Chester County as a result of Essex's failure to defend and indemnify Toll in the Ort/Iyer lawsuit. The suit was removed to this Court based on diversity of citizenship. Toll asserted claims for the following against Essex: (1) breach of contract; (2) defense and indemnification; (3) declaratory judgment; (4) breach of good faith and fair dealing; and (5) third party beneficiary.

On November 8, 2007, Essex moved for summary judgment. Essex asserted that Toll was not entitled to any coverage because the insurance policies no longer exist on account of Essex's successful rescission of the policies in the Essex/H.A.S. action. In short, Essex asserted that relitigation of the issues regarding the rescission of the Policies was precluded pursuant to the doctrines of res judicata and collateral estoppel.

On March 7, 2008, this Court granted Essex's motion for summary judgment. *Toll Bros. Inc. v. Century Sur. Co.*, CIV.A. 07–1296, 2008 WL 638232 (E.D. Pa. Mar. 6, 2008), *rev'd*, 318 F. App'x 107 (3d Cir. 2009). The Court granted summary judgment on two grounds: (1) the rescission order in the Essex/H.A.S. action had claim preclusive effect on the instant case, and (2) no coverage existed for Toll under the Policies pursuant to the terms of the "Additional Insured Endorsement"—which states that an additional insured was entitled to no greater coverage than the primary insured—because the insurance policy between Essex and H.A.S. was rescinded. Toll appealed to the United States Court of Appeals for the Third Circuit.

**C. Third Circuit Reversal**

On March 24, 2009, the Third Circuit issued an Opinion reversing and remanding this Court's grant of summary judgment in favor of Essex. *Toll Bros., Inc. v. Century Sur. Co.*, 318 F. App'x 107 (3d Cir. 2009). The Third Circuit held that there was no privity between Toll and H.A.S. because their interests in the Essex/H.A.S. action conflicted. Specifically, the Third Circuit reasoned that "[b]y its default in [the Essex/H.A.S. action,] H.A.S. was clearly indifferent to a decision rescinding its Essex insurance policy. Toll, however, had a strong interest in opposing the rescission of the Essex insurance policy." *Id.* at 112. Accordingly, in the absence of such privity, Essex could not successfully argue that res judicata applied.

Further, the Third Circuit specifically noted that its decision permitted Toll to contest whether H.A.S. in fact perpetrated a fraud entitling Essex to void its H.A.S. policy. *Id.* at 113. The Third Circuit also reversed summary judgment on the issue of whether Toll is entitled to coverage notwithstanding the rescission of H.A.S.'s coverage.[1] *Id.*

**D. Remand**

On remand, Essex moved for summary judgment on all of Toll's claims on the grounds that Essex was not required to provide a defense for Toll. Specifically, Essex argued that H.A.S. made material misrepresentations during the insurance application process, warranting a

[1] With regard to this issue, the Third Circuit stated,

> Judge Tucker also determined below that since in her view the Essex policy was void; "there exists no coverage for the additional insured, Toll Bros., pursuant to the terms of the Additional Insured Endorsement." Toll, however, made several arguments below that the policy might permit coverage for an additional insured notwithstanding a rescission of H.A.S.'s coverage. As those arguments were never considered by Judge Tucker, we likewise reverse the grant of summary judgment on this issue.

*Toll Bros., Inc. v. Century Sur. Co.*, 318 F. App'x 107, 113 (3d Cir. 2009).

rescission of the Policies, and that Toll was not entitled to any more coverage than that afforded to H.A.S. Additionally, Toll moved for partial summary judgment on the discreet issue of whether Essex had a duty to provide a defense to Toll in the Ort/Iyer lawsuit.

On June 17, 2013, this Court granted Toll's motion for partial summary judgment and granted in part Essex's motion for summary judgment. *Toll Bros. Inc. v. Century Sur. Co.*, No. CIV.A. 07-1296, 2013 WL 3009721 (E.D. Pa. June 17, 2013). Regarding Essex's argument for rescission of the Policies, this Court determined that the Policies issued to H.A.S. "were properly rescinded" on account of misrepresentation by H.A.S. *Id.* at *7.

This Court next concluded that Toll, pursuant to the policy, was entitled to "coverage that is no greater than the coverage available to H.A.S." *Id.* at *9. In making this determination, this Court relied on the "Additional Insured Endorsement" in the Policies, which stated, "It is further agreed that where no coverage shall apply herein for the Named Insured [H.A.S.], no coverage nor defense shall be afforded to the above-identified additional insured [Toll]." *Id.* at *8. This Court rejected Toll's counterargument that it was an innocent co-insured, because Toll and H.A.S. had joint interests in the Policies pursuant to the language of the Policies. *Id.* at *10 ("The language of the Additional Insured Endorsement does not support the conclusion that H.A.S. and Toll had separate interests.").

Finally, this Court held that Essex breached its duty to defend Toll. This Court noted that the duty to defend under an insurance policy is "broader" than the duty to indemnify. *Id.* at *11. The duty to defend arises whenever a complaint filed by an injured party may potentially come within the Policies' coverage. *Id.* Essex's decision to defend H.A.S.—but not Toll—in the Ort/Iyer action demonstrates Essex's belief that the Ort/Iyer complaint potentially fell under the

policy. *Id.* at *12.[2] Accordingly, this Court granted summary judgment in favor of Essex on all of Toll's claims except for Toll's duty to defend claim, for which the Court granted summary judgment in favor of Toll. *Id.* at *12–13.

On July 16, 2014, Toll filed the present Affidavit of Fees and Costs. In its Affidavit, Toll seeks attorney fees and costs it incurred as a result of Essex's failure to defend Toll in the Ort/Iyer lawsuit. Toll also seeks fees and costs that it incurred in the instant litigation for "having to compel Essex, through this litigation, to honor its defense obligations." Aff. of Fees and Costs, Doc. 88, ¶ 11. Also, upon request of the Court, the parties each submitted memoranda on whether Essex had a duty to defend Toll and the effect of the Policies' rescission, if any, on that duty. Upon reviewing the parties' arguments, this Court vacates its June 17, 2013 order to the extent that it granted Toll's Motion for Partial Summary Judgment on the duty to defend claim, and enters summary judgment in favor of Essex on that claim.

## II. Legal Standard

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and [it] is entitled to a judgment as a matter of law." FED R.

---

[2] Specifically, this Court stated:

> Here, the Court is faced with a situation in which Essex made a decision to provide a defense to H.A.S., the named insured, but not to Toll, the additional insured. Essex made this decision despite the fact that the causes of action asserted against Toll in the Ort/Iyer lawsuit were identical to the claims asserted against H.A.S. Essex, in providing a defense to H.A.S., clearly recognized that the claims asserted against H.A.S. potentially fell within the scope of the Policies. By analogy—because the language of the Additional Insured Endorsement implicitly makes the rights of Toll coextensive with the rights of H.A.S.—this means that the claims asserted against Toll also potentially fell within the scope of the Policies. Having made the determination that the Ort/Iyer claims were potentially covered, Essex was obligated to provide Toll a defense.

*Toll Bros. Inc.*, 2013 WL 3009721, at *12 (footnote omitted).

CIV. P. 56(a); *see also Levy v. Sterling Holding Co., LLC*, 544 F.3d 493, 501 (3d Cir. 2008). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *See Anderson*, 477 U.S. at 248; *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 327 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Comm'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains. *See, e.g.*, *Love v. Rancocas Hosp.*, 270 F. Supp. 2d 576, 579 (D.N.J. 2003); *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 205 F. Supp. 2d 324, 330 (D.N.J. 2002).

## III. Discussion

The Court considers the effect of the Policies' rescission on Essex's duty to defend Toll because resolution of this issue determines the propriety of an award of attorneys' fees. Under Pennsylvania law, interpretation of an insurance contract, including analysis of coverage, is a question of law determined by the court. *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007) (citing *Minn. Fire and Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004)). Pennsylvania law also provides that an innocent party may rescind a contract if it is induced to enter the contract "by means of fraud or a material misrepresentation[.]" *R & R Capital, LLC v. Merritt*, 632 F. Supp. 2d 462, 479 (E.D. Pa. 2009). The Supreme Court of Pennsylvania has explained that a

> rescission amounts to the unmaking of a contract and is not merely a termination of the rights and obligations of the parties towards each other, but is an abrogation of all rights and responsibilities of the parties towards each other from the inception of the contract. It is a form of retroactive relief.

*Klopp v. Keystone Ins. Co.*, 595 A.2d 1, 4 n.6 (Pa. 1991) (quoting *Metro. Prop. and Liab. Ins. Co. v. Commonwealth*, 509 A.2d 1346, 1348 (Pa. Commw. Ct. 1986)). "The purpose of an equitable rescission is to return the parties as nearly as possible to their original positions with respect to the subject matter of the contract." *R & R Capital, LLC*, 632 F. Supp. 2d at 480.

Rescission is distinct from cancellation. *Klopp*, 595 A.2d at 4 n.6. "Cancellation is an act destroying the force and effectiveness of the contract, and is a form of prospective relief, affecting the future rights and obligations of the parties towards each other." *Id.* (quoting *Metro. Prop. and Liab. Ins. Co.*, 509 A.2d at 1348).

The primary issue here is whether Essex is obligated to reimburse Toll in light of the rescission of the Policies. Essex argues that rescission, now adjudicated, is a retroactive remedy that abrogates the rights and obligations of all parties under the Policies, including Essex's duty

to defend Toll against the Ort/Iyer lawsuit. Essex contends that it does not owe reimbursement for any fees or costs for activities that fall after this Court's May 7, 2007 rescission order in the Essex/H.A.S action. In response, Toll counters that Essex's rescission claim was not fully litigated until the rights of Toll were determined on remand in the instant case. This Court's June 17, 2013 order and opinion found that Essex owed Toll a duty to defend. Thus, Toll concludes that Essex is liable for its failure to defend Toll in the Ort/Iyer lawsuit, which concluded in settlement on August 20, 2007. As a result of Essex's breach of its duty to defend, Toll seeks as damages, fees and costs incurred in both the Ort/Iyer lawsuit and the instant action.

As noted above, this Court has held that the Policies between Essex and H.A.S. have been properly rescinded on account of misrepresentation by H.A.S. Essex's duty to defend Toll arose from the Policies. This Court had also held that, under the Policies, Essex had a duty to defend Toll to the same extent that it did for H.A.S in light of the "Additional Insured Endorsement," which stated, "It is further agreed that where no coverage shall apply herein for the Named Insured [H.A.S.], no coverage nor defense shall be afforded to the above-identified additional insured [Toll]." *Toll Bros. Inc.*, 2013 WL 3009721 at *8. According to the Court, since Essex defended H.A.S., it followed that Essex should have defended Toll in the Ort/Iyer lawsuit since the claims asserted against H.A.S. and Toll were identical. *Id.* at *12.

However, the May 7, 2007 order in the Essex/H.A.S. action—which rescinded the Policies as to H.A.S.—retroactively voided "all rights and responsibilities" that Essex had toward H.A.S. *See Klopp*, 595 A.2d at 6 n.6 (quoting *Metro. Prop. and Liab. Ins. Co.*, 509 A.2d at 1348) (describing the effects of rescission of a contract); *cf. Assoc. Elec. & Gas Ins. Servs., Ltd. v. Rigas*, 382 F. Supp. 2d 685, 692 (E.D. Pa. 2004) (refusing to find an insurance policy void, which would extinguish a duty to defend, when rescission had not been judicially

determined). It logically follows that Essex had no duty to defend H.A.S. because the rescission abrogated this duty. It likewise follows that Essex had no duty to defend Toll either. The June 17, 2013 rescission order in this action voided the Policies as to Toll, thereby extinguishing "all rights and responsibilities" that Essex owed Toll "from the inception of the contract," including Essex's responsibility to defend Toll in the Ort/Iyer lawsuit. *See id.*

Although the duty to defend under an insurance policy is broader than the duty to indemnify, both duties arose from the insurance policy. Just as the rescission voided Essex's duty to defend H.A.S., the rescission also voided Essex's duty toward Toll. The recent rescission order did not merely cancel Essex's duty toward Toll going forward; it abrogated Essex's duty altogether.

This Court is mindful that it had granted Toll's motion for partial summary judgment in favor of Toll as to Essex's duty to defend. Nevertheless, a district court has the authority to revise interlocutory orders *sua sponte*. *See, e.g.*, *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973) (stating that "so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so"); *Smithkline Beecham Corp. v. Apotex Corp.*, No. CIV.A. 00-CV-1393, 2004 WL 1615307, at *11 (E.D. Pa. July 16, 2004) ("We have the power to sua sponte reconsider our earlier interlocutory order denying certification under Rule 54(b)"). Upon reconsideration of Essex's duty to defend Toll, this Court vacates its June 17, 2013 order to the extent that it granted summary judgment in favor of Toll, and enters summary judgment in favor of Essex on Toll's duty to defend claim.

**IV.     Conclusion**

Because the insurance policies between Essex, H.A.S., and Toll have been rescinded, this Court vacates its June 17, 2013 order to the extent that it granted Toll's Motion for Partial Summary Judgment on the duty to defend claim, and enters summary judgment in favor of Essex on that claim. Because rescission of the Policies retroactively extinguished Essex's duty to defend Toll, this Court declines to award fees and costs to Toll.

An appropriate Order follows.